UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ETHLYN D. JOHNSON,

                              Plaintiff,

           - against -

THE NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,

                            Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-00025 (BMC)

**COGAN**, District Judge.

      Plaintiff Ethlyn Johnson brings this action against her employer, the New York City Health and Hospitals Corporation, alleging violations of the Age Discrimination in Employment Act ("ADEA") and corresponding state and city statutes.[1] Defendant's motion for summary judgment is GRANTED for the reasons set forth below.

## BACKGROUND

**I.    Plaintiff's Background**

      At the commencement of her lawsuit, plaintiff was a sixty-four-year-old woman employed by defendant as a Coordinating Manager in the Social Work Department of Queens Hospital. She had been employed by defendant since 1986 in a variety of secretarial roles and held her current position since 2014. In her role as a Coordinating Manager, plaintiff's responsibilities included, but were not limited to, scheduling appointments; answering phones;

---

[1] Although plaintiff also originally brought a claim for intentional infliction of emotional distress, she voluntarily withdrew this claim by letter on March 2, 2021.

assisting patients, visitors, and staff by answering questions; ordering supplies; maintaining the petty cash supply; providing metro cards to patients; and making copies.

In January 2018, the employee who held the position of Senior Health Care Program Planner Analyst ("HCPPA") retired. Plaintiff was asked to, and did temporarily assume, many of the duties of the role that overlapped or related to her position. These tasks included organizing social work month; scheduling certain meetings, conferences, and seminars; maintaining the licensure of the social work staff and other departmental files; ensuring the Xerox machine was operational; and maintaining the batteries for beepers. She also once provided a transcription and dictation of minutes for a departmental meeting.

## II.     The HCPPA Position

In April 2019, defendant sought to permanently fill the HCPPA position and put up an online posting advertising it. The posting provided for minimum educational qualifications, consisting of either a baccalaureate degree in specific areas of study and four years of relevant experience in health program planning, research, design, operation, evaluation, or analysis; a master's degree in the same areas and three years of the same relevant experience; or a satisfactory equivalent combination of training, education, and experience. The position also required "[d]emonstrated skills in written and oral communication." Plaintiff never graduated from high school or college, although she had a GED and some college credits.

The job posting also included a long list of the role's essential responsibilities and functions. Although plaintiff had taken on some of the HCPPA functions temporarily, she had not assumed all the responsibilities listed in the job posting. Specifically, plaintiff had not developed departmental office systems; coordinated the Director of the Social Work Department's "appointments, meetings, and events"; transcribed, drafted, proofread, or advised correspondence, memos, flyers, agendas, minutes resolutions, and

policies; assisted with project monitoring or budget tracking; prepared monthly or quarterly director reports; or tracked budgets.

Mark White, plaintiff's supervisor, was the Social Services Department Director responsible for filing the position. He testified that the position required certain computer skills, including proficiency in various Microsoft Office programs. Plaintiff's resume listed "Microsoft Office 2010 – Beginning Access, Excel, Power[P]oint 2007 – level 1," and "[c]omputer courses" as skills. She had taken a Windows 10 Overview Training in 2018. White testified that plaintiff was not competent in this area. He noted that she had previously refused to provide him an Excel document that he requested. Plaintiff does not dispute that, although she tries to excuse it.

Plaintiff's performance reviews from that period reflect some issues with her computer skills and in other areas. In an August 2019 performance review, White found that she "has not benefitted from computer, writing, and typing training/classes this past review period" and that, "as mentioned in the previous performance evaluation", she could "benefit from establishing an organizational system to help prioritize her tasks and ensure optimal departmental operation." Although "the department functions – it does not function optimally and it can with the aforementioned skill enhancements." In evaluating plaintiff's "verbal and written communication skills," White remarked that she "will be supported and encouraged to attend workface development trainings." In the "Plan for Improvement" section of the evaluation, White concluded that she "can still benefit from enhancing her Coordinating Manager skill sets – computer, writing, customer service."

Nevertheless, White also found that plaintiff's performance was generally satisfactory, despite the increased responsibilities. He rated her performance as satisfactory-plus in several

categories, mainly those surrounding her relationships with co-workers, noting that she "is a caring person and thoughtful towards her colleagues." Co-workers agree that plaintiff was well-liked and well-respected within the department, with several eventually submitting letters in support of her candidacy for the HCPPA role.

**III.   Application Process**

Plaintiff applied for the HCPPA position shortly after the job posting went live. White interviewed her, and concluded that "she didn't interview strong." During the interview, White asked plaintiff if she had ideas of ways in which to improve the system and policies in the department. Plaintiff did not provide an answer to this question because she felt that White had already made up his mind not to offer her the position, "so why would I tell him ways to improve his department[?]" As one of the key responsibilities of the role was to establish and implement departmental policies, White described this moment during the interview as a "very poignant and a very pivotal point that she wasn't able to really speak to the role, what you would do differently."

Ultimately, plaintiff was not offered the role and White continued to interview other candidates. Plaintiff alleges that certain statements that White made to another candidate, Ellen Bellamy, suggest age discrimination. The "evidence" of this is an unsworn, "to whom it may concern" letter from a co-worker, Pearl Gabriel. Gabriel contends that Bellamy told her (Gabriel) that White referred to plaintiff her as "mature" and that he "attack[ed]" plaintiff's "character by calling her old and incompetent."

Gabriel's to-whom-it-may-concern letter also asserts that unnamed third parties claimed that White had made similar statements. So does another unsworn, to-whom-it-may-concern letter from another of plaintiff's co-workers, Renee Gomez.[2]

Bellamy was deposed and she does not agree with Gabriel's unsworn letter. Bellamy testified that in speaking to White about the job, White never mentioned plaintiff's name; he asked Bellamy whether, if plaintiff got the job, Bellamy would feel comfortable supervising someone more mature than herself. Bellamy also testified that she (Bellamy) asked White who else had applied for the job, and White replied that someone within his department had applied but that person was not qualified.

## IV. Selection of Kathy Donovan

White ultimately hired Kathy Donovan, a fifty-four-year-old woman. Donovan had a Bachelor of Arts with a major in Corporate Communication, and a minor in Industrial and Organizational Psychology. These were among the preferred fields listed in the job posting. Donovan had approximately 17 years of administrative and executive assistant experience with approximately one year of experience in a hospital setting. She had also served as the Director of Community Relations at a Community Development Corporation and as a substitute teacher for approximately one year. In her most recent role, she had worked as an administrative assistant and office manager with the New York City Department of Education, reporting directly to the Superintendent. There, her responsibilities included "implementing[ing] systems, procedures, and policies . . . writing and implementing the office's standard operating procedures, implementing

---

[2] Plaintiff notes in her opposition to defendant's motion for summary judgment that "after close of discovery" she was "made aware that another colleague . . . Devika Singh was told by Mark White that Plaintiff would not receive the HCPPA position because of her age." However, there is no evidence in the record to support this assertion, and I therefore will not consider it.

5

electronic filing systems . . .review and analysis of special projects . . . ensur[ing] that the office's financial objective are met by monitoring" budgets, "compos[ing] letters, memoranda, and emails," "prepar[ing] and disseminating[ing] team meeting minutes," and "perform[ing] all administrative tasks." She also listed Microsoft Office Suite as a skill on her resume.

White testified that he hired Donovan because "[s]he has varied experiences in establishing tickler systems" and that "she has worked with high level administration" which required her to do "a lot of the tasks and standards that I was needing for someone to perform." He also found that Donovan was "very prompt in her use of best practices and things that she would bring to the department," and that they had discussed her experience, including that she took minutes and used Excel. Although "she may not have worked in a medical setting" for as long as plaintiff had, White found that "a lot of her skill sets were directly related to interfacing with the public."

## DISCUSSION

**I.      Legal Standard**

A party's motion for summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c)(2). The movant must demonstrate the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are in dispute only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," see id., and the facts "must be viewed in the light most favorable to the nonmoving parry." Scott v. Harris, 550 U.S. 372, 380 (2007)

(internal citation omitted). If the movant succeeds in showing that no genuine issue remains to be tried, then summary judgment should be granted unless the opposing party can "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal citations omitted).

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009). A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985).

In cases involving claims of discrimination, "an extra measure of caution is merited in [granting] summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)). However, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). "[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact,'" id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)), and even in the discrimination context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). A

"nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

## II.      Federal Claims – Age Discrimination Under the ADEA

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection extends to employees who are over the age of forty. Id. § 631(a).

Claims of adverse employment discrimination under the ADEA are governed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Abdu-Brisson, 239 F.3d at 466. Under this framework,

> a plaintiff must first establish a prima facie case of age discrimination. Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the presumption of age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action.

Id. "A defendant meets his burden if he presents reasons that, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Id. at 470 (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993)).

"In order to establish a prima facie case of age discrimination, the plaintiff must show (1) that [she] was within the protected age group, (2) that [she] was qualified for the position, (3) that [she] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Green v. Town of E. Haven, 952 F.3d 394, 403 (2d Cir. 2020).

8

It is undisputed that plaintiff, at sixty-four, was within the age group protected by the ADEA, and that she suffered an adverse employment action when she applied for, and did not receive, the promotion. Therefore, only the second and fourth prongs of the *prima facie* case are at issue here. But it is doubtful that plaintiff can satisfy either of those prongs.

Plaintiff does not meet the threshold requirements of the job posting: she did not have a baccalaureate degree in specific areas of study and four years of relevant experience in health program planning, research, design, operation, evaluation, or analysis; or a master's degree in the same areas and three years of the same relevant experience. Although the job posting gave defendant discretion to waive those requirements if the applicant had equivalent experience, plaintiff would have to show that the decision not to waive the requirements was pretextual, which then takes us to the fourth prong of the *prima facie* case – whether there is circumstantial evidence permitting an inference of discrimination.

Plaintiff has no admissible evidence of that. The only facts to which plaintiff can point are that she is in the protected class, and Donovan was ten years younger – even though Donovan was also in the protected class and, unlike plaintiff, met the threshold requirements for the job posting. Plaintiff cannot rely on the hearsay, double hearsay, and, indeed, triple hearsay from Gabriel and Gomez's letters, as the express language of Rule 56, for obvious reasons, allows the Court to consider only admissible evidence. Fed. R. Civ. P. 56(c)(4); Chansamone v. IBEW Local 97, 523 F. App'x 820, 823 n.4 (2d Cir. 2013) ("[w]e do not consider [the plaintiff employee's] testimony that co-workers told him that [the hiring supervisor] would not hire him 'as an Asian,' because that testimony is inadmissible hearsay").

Even if we assumed, based on the *de minimis* standard required to demonstrate a *prima facie* case, see Timbie v. Eli Lilly & Co., 429 F. App'x 20, 22 (2d Cir. 2011), that plaintiff had

9

made that showing, the same deficiencies would certainly cause her to fail at steps 2 and 3 of McDonell-Douglas. Starting at step 2, courts have found that where an employer hires an individual with "superior qualifications" to those of plaintiff's or who is "better suited" for the position, it presents a legitimate, non-discriminatory reason for its failure to promote. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) (defendant met its burden of providing a legitimate, non-discriminatory reason for rejecting an employee where it selected the "best-qualified candidate"); Antunes v. Putnam/N. Westchester Bd. of Co-op. Educ. Servs., No. 09-cv-3063, 2011 WL 1990872, at *7 (S.D.N.Y. May 19, 2011) (defendants met burden of establishing legitimate, nondiscriminatory reason for not hiring plaintiff where they established that the individuals hired instead had "superior qualifications"); Isaac v. City of New York, 701 F. Supp. 2d 477, 487 (S.D.N.Y. 2010); Moorehead v. New York City Transit Auth., 385 F. Supp. 2d 248, 253 (S.D.N.Y.), aff'd, 157 F. App'x 338 (2d Cir. 2005). A defendant meets its burden at step 2 if it presents reasons that, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr., 509 U.S. at 509 (emphasis omitted). The burden on a defendant at step 2 is as *de minimis* as the plaintiff's burden at step 1. See Gibbs v. Consol. Edison Co. of New York, 714 F. Supp. 85, 89 (S.D.N.Y. 1989).

Defendant easily makes that showing here. It has produced documentary evidence of weak computer skills, poor performance during her interview, and the superior qualifications of the candidate who ultimately was hired. White testified that he hired Donovan because "[s]he has varied experiences in establishing tickler systems" and that "she has worked with high level administration" which required her to do "a lot of the tasks and standards that I was needing for

someone to perform." Donovan also had more than 17 years of relevant experience at the time of her selection. That is more than sufficient for defendant to meet its burden at step 2.

At step 3, a district court must determine "by looking at the evidence [plaintiff] has proffered and the counter-evidence [defendant] has presented, whether [plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a but-for cause of" defendant's decision to not promote her. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010). "In this respect it is important to consider whether the explanations that [defendant] gave . . . were pretextual." Id. A district court must consider "the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." Friedman v. Swiss Re Am. Holding Corp., 643 F. App'x 69, 72 (2d Cir. 2016) (quotations omitted). "In such situations, plaintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus." Leibowitz v. Cornell Univ., 584 F.3d 487, 504 (2d Cir. 2009).

Summary judgment will be appropriate "if the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 249 (2d Cir. 2005) (quoting Reeves, 530 U.S. at 148). It is "extremely difficult, if not practically impossible" to establish discrimination where a plaintiff was passed over so an employer can hire another member of the plaintiff's same protected class. See Fleming v. MaxMara USA, Inc., 644 F.Supp.2d 247, 261 (E.D.N.Y. 2009).

Plaintiff fails at step 3 for the same reasons she probably cannot show a *prima facie* case. She cannot show that defendant's justification for its hiring decision was mere pretext for age discrimination. No reasonable jury could find defendant's *bona fide* reason for not hiring was pretextual or that plaintiff's age was the "but for" cause of her not being hired.

Plaintiff and Donovan are both above forty, and therefore equally protected under the ADEA. Plaintiff is essentially asking for a jury to find that White engaged in age discrimination because he wanted a 54-year-old instead of 64-year-old. Perhaps that could occur in a case where there was some reason that ten years between protected class members might make a difference in some way, but there is no evidence of that here. And plaintiff is further handicapped because under the ADEA standard, she would have to show that the ten years was the but-for reason for the hiring decision, not just a substantial factor.

As to the comparability of their qualifications, "[u]nfortunately for plaintiff, employers enjoy 'unfettered discretion to choose among qualified candidates' and to decide which types of credentials are of the most importance for a particular job, and courts defer to-employers to select what criteria are important to them when evaluating the issue of pretext." Jimenez v. City of New York, 605 F. Supp. 2d 485, 524–25 (S.D.N.Y. 2009) (quoting Byrnie v. Town of Cromwell Bd. of Ed., 243 F.3d 93, 103 (2d Cir. 2001)). The Court's role is simply to determine whether a disparity in plaintiff's and Donovan's qualifications would allow a fact finder to reasonably conclude that defendant's justification for hiring the latter rather than promoting plaintiff was a pretext for discrimination. The Court is not to act as a "super personnel department," second-guessing the merits of defendants' legitimate business decisions. See Meacham v. Knolls Atomic Power Lab., 461 F.3d 134, 144 (2d Cir. 2006).

But second-guessing the wisdom of hiring Donovan is exactly what plaintiff wants a jury to do. Plaintiff does not argue that Donovan was unqualified for the position. She argues only that plaintiff was more qualified by virtue of her experience in hospital settings, her previous experience with some of the responsibilities of the role, and that she listed more computer skills on her resume. However, "to survive a motion for summary judgment, an employee asserting that his employer's proffered explanation is a pretext for discrimination based on his supposedly stronger qualifications must demonstrate that his credentials are 'so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the [employee] for the job in question.'" Jimenez, 605 F. Supp. 2d at 525 (quoting Byrnie, 243 F.3d at 103).

Plaintiff has not shown herself to be so objectively better qualified than Donovan. She asserts that "a simple review of the resume" she submitted shows that she had "better experience, knowledge, and skills than Kathy Donovan, as [she] performed all of the aforesaid duties during her employment with Defendant and in connection with her coverage of the tasks and duties associated with the HCPPA position for approximately 16 months." Additionally, "a comparison of their resumes reflects that [p]laintiff had more relevant experience than Kathy Donovan." For example, plaintiff notes that she worked in "relevant positions" since 1986, whereas Donovan had only 17 years of experience, with only "one year of experience in a hospital setting." There are numerous omissions in plaintiff's argument.

First, plaintiff did not perform all the tasks and duties associated with the HCPPA position for approximately 16 months. Plaintiff performed some of the tasks, but mainly those that overlapped with or were closely related to the type of work she undertook in her current role,

13

such as providing back-up administrative coverage. In fact, one of the listed HCPPA duties was so closely related to her current role that it involved assisting herself.

Plaintiff conceded during her deposition to not performing several of the listed tasks. Moreover, the tasks that she testified to not performing included the most difficult responsibilities, requiring the most skill and knowledge, such as "assisting with project monitoring or budget tracking" or "develop[ing], implement[ing], and administer[ing] departmental office systems and procedures."[3] These tasks are in the areas that White noted she needed to improve upon during her 2019 performance review, suggesting that he could reasonably doubt her ability to perform these more advanced functions.

Second, plaintiff's reliance on her resume is misplaced because White knew a lot about her, far more than a resume can convey. Although "[f]amiliarity with a person's work is but another kind of credential, and it does not violate the law for a decision-maker to prefer someone whose work he or she already knows and likes to an outsider whom he/she knows only through a resume and an interview," Jimenez, 605 F. Supp. 2d at 526, the converse is equally true. White was already familiar with plaintiff's work and had determined that she was not ready to be promoted. Her performance evaluations support this conclusion, reflecting that she needed to focus on improving her skill set in her current role.

---

[3] Plaintiff argues that these tasks are not actually part of the HCPAA role, and that Donovan has not been performing all of them either. However, "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." D'Amico, 132 F.3d at 151. Moreover, plaintiff's perception of what Donovan might be doing, or what the position entails, is not necessarily accurate. Even if it were, it would not be unreasonable for an employer to decide to expand the responsibilities of a role when hiring a new candidate, nor would it be to not immediately require a new hire to perform all the tasks the employer hoped the employee would eventually assume.

Similarly, plaintiff's argument that computer skills are not important as they "hardly use computer in [her] department," is inadequate. Aside from giving deference to her employer's characterization of the role, her testimony is belied by the repeated importance her employer placed on her computer skills in her performance evaluations. If such skills were not important to her job, even at a lower level, then it is not factually consistent to suggest she needs further training if such skills were not necessary in her department.

Putting aside the hearsay problems with her co-workers unsworn letters, their positive assessments or her own belief in her skills do not ameliorate this. "[A] coworker's positive opinion of a plaintiff's work is inadequate to create an issue of fact where the employer was dissatisfied with plaintiff's performance." Josma v. New York City Health & Hosps. Corp., No. 10-cv-3610, 2012 WL 3861171 (E.D.N.Y. Sept. 5, 2012).

Third, plaintiff also argues that her resume "reflects more specific and relevant computer skills" than that of Donovan's. Even if true, merely noting experience on a resume is not evidence that she indeed has those skills; exaggeration on resumes by job applicants is not uncommon. In fact, plaintiff's own testimony was that although she has "computer experience" she does "not use computer like with different programs." Her performance evaluations also speak to a deficit of computer skills. That she took a basic Microsoft Word Overview class in 2018 does not alter this conclusion, particularly because she took this class before that performance review.

Fourth, although plaintiff had more experience in a hospital setting than Donovan, that does not render her more qualified. Having such experience is not a requirement of the position, and Donovan had previous experience in a hospital setting. Moreover, White acknowledged that he took this into account, and found that her skill set was readily transferable.

Plaintiff has also failed to address her disappointing performance at her interview. That alone presents a valid reason for an employee's decision not to promote. See Byrnie, 243 F.3d at 104 ("[t]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview"). For whatever reason, plaintiff admits that she refused to answer a question about suggestions that she had for improving practices and policies within the department during her interview. That's obviously a

crucial question in any managerial job interview. The responsibilities of the HCPPA role involved establishing and implementing policies. This was not an area plaintiff in which had experience. It was reasonable for White to weigh her non-answer heavily.

### III. State and City Law Claims

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013) (citation and quotations omitted). Given that plaintiff's federal law claims all have been dismissed, the Court declines to exercise supplemental jurisdiction over her further state and city law claims.

### CONCLUSION

Defendant's summary judgment motion is GRANTED with respect to plaintiff's ADEA claim. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, which are dismissed without prejudice.

The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
June 21, 2022